(Decided 29th May, 1885.)

## PATRICK M. CARROLL *vs.* THE STATE OF MARYLAND.

*Indictment—Selling liquor to a Minor—Sec. 93, of Art. 12, of the Revised Code—Principal and Agent.*

A licensed dealer in spirituous liquors, indicted for unlawfully selling liquor to a minor, cannot escape the penalty of the offence, by proving that the sale was made by his barkeeper, during his absence, without his knowledge, and contrary to his instructions given in good faith, and which were so understood by the barkeeper. The intent in such case is immaterial in determining the guilt.

Where the agent is set to do the very thing, which, and which only, the business of the principal contemplates, namely, the dispensing of liquors to purchasers, the principal must be chargeable with the agent's violation of legal restrictions on that business. The act of the agent is the act of the principal.

APPEAL from the Circuit Court for Allegany County.

The appellant was indicted, tried and convicted for sell-ing whiskey to a minor, in violation of section 93 of Article 12 of the Revised Code. The case is further stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., YELLOTT, MIL-LER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*De W. H. Reynolds,* and *William Brace,* for the appel-lant.

*Benjamin A. Richmond, State's Attorney for Allegany County,* and *Charles B. Roberts, Attorney-General,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellant, who was a licensed dealer in spirituous liquors, was indicted for unlawfully selling liquor to one William Miller, a minor under the age of twenty-one years. At the trial two exceptions were taken, which are intended to present the same question, and the only ques-tion, in fact, which is involved. The sale was made by appellant's bar tender, out of the presence of the appel-lant, and without his knowledge of this particular sale. This was proved by the purchaser who also proved he was a minor. In addition to these facts, the appellant offered to prove by the bar tender, that the appellant had given him instructions not to sell to minors, and these instruc-tions were understood by the bar tender to be *bona fide,* and that he would not intentionally have violated them. He also offered to testify himself, that he had given these instructions to his barkeeper in good faith, and intended them to be obeyed, and that he had no idea of their viola-tion in this or any other case. Both offers, on objection of the State, were refused, and the traverser excepted. A

principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him, 1 *Wharton's Crim. Law, sec.* 247 ; and a vender of spirituous liquors is indictable for the unlawful sale by his agent employed in his business, because all concerned are principals. 2 *Wharton's Cr. Law,* 1503. This is conceded by appellant's counsel, and it is also conceded, that in the absence of evidence to the contrary, the authority to do the thing complained of may be inferred from the relations of the parties. If there be no authority, express or implied, of course the party indicted ought to be acquitted. The question here is, whether, when the agency for the transaction of the business of selling liquors generally, is established and admitted, and, in the conduct of that business, a prohibited sale is made by the agent to a minor, the principal may shield himself from liability, on the ground that his agent violated his general instructions, and did not inquire, or was deceived by the purchaser as to his age. The question is whether, while deriving the profit from the sale, the principal can delegate *his duty* to know that a purchaser is a lawful one to the determination of an agent, and be excused by the agent's negligence or error.

The law for the violation of which this appellant has been indicted is a police regulation of a very stringent character. It is in these words: "If any person shall sell any spirituous, or fermented liquors, or lager beer, to any person who is a minor, under twenty-one years of age, he shall, on conviction, pay a fine of not less than fifty dollars nor more than two hundred dollars, together with the costs of prosecution, and upon failure to pay the same shall be committed to gaol and confined therein until such fine and costs are paid, or for the period of forty days, whichever shall first occur ; and it shall be the duty of the Court before whom said person shall be convicted to suppress his license." For the violation of a statute of

this nature it is not necessary to allege the *scienter* in the indictment, because it is not made an ingredient, by the statute, that the thing shall be *knowingly* and *wilfully* done, to make the violation of the statute an offence. As ignorance of the existence of such law will not excuse, so also ignorance of a fact necessary to be known to avoid a violation of the law will not excuse. 3 *Greenleaf on Evidence, sections* 20 and 21. Where an act, if done knowingly, would be *malum in se,* ignorance, which excludes the idea of intentional wrong, it would seem will excuse ; but Mr. *Greenleaf* says, in section 21 of vol. 3 of his work *on Evidence,* " where a statute commands that an act be done or omitted, which, in the absence of such statute might have been done or omitted without culpability, ignorance of the fact 'or state of things contemplated by the statute, it seems, will not excuse its violation." He adds : " Such is the case in regard to fiscal and police regulations, for the violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted ; for the law, in those cases, seems to bind the party to know the facts and to obey the law at his peril." In the note to this section instances are given where such rule applies; and it is said to apply to the sale of any article the sale of which is prohibited, and, it has been held to be no excuse, that the vender did not know it was the prohibited article. 3 *Greenleaf, sec.* 21, *note.* The sale of spirituous liquors, where prohibited, is specially mentioned as within this rule ; as also the allowance of minors to play billiards where that is prohibited. . This doctrine is maintained in *Commonwealth vs. Emmons,* 98 *Mass.,* 6 ; *McCutcheon vs. The People,* 69 *Ill.,* 606 ; *Barnes vs. The State,* 19 *Conn.,* 398 ; *State vs. Hartfiel,* 24 *Wisconsin,* 60 ; *Ulrich vs. Commonwealth,* 6 *Bush,* (*Ky.,*) 400 ; and in very many other cases in Massachusetts and other States. It is upon the ground, that intention is not an essential ingredient of the offence, that the principal is held bound for the act .of

his agent in violation of law whilst pursuing his ordinary business as such agent. Being engaged in business where it is lawful to sell to all persons except such as are by law excepted, it is his *duty* to know when a sale is made, that it is to a properly situated person. Therefore it is his duty to trust nobody to do his work but some one whom he can safely trust to discharge his whole duty, and if he does not do so, the law holds him answerable.

The leading case of *Rex vs. Gutch, Moody & Malk.,* 433, cited in 1 *Taylor's Ev.,* 827, states the law as it is now generally received. The prosecution was for a libel. Lord TENTERDEN says: "A person who derives profit from, and who furnishes the means for carrying on the concern, and entrusts the business to one in whom he confides, may be said to have published himself, and ought to be answerable."

In *The Queen vs. Bishop, L. R.,* 5 *Queen's Bench Div., (Crown Cases Reserved,)* 259, the defendant was convicted of receiving into her house two or more lunatics, not being a registered asylum or house duly licensed by law. The jury found specially that the defendant *honestly and on reasonable grounds believed,* that the persons received into her house were not lunatic; though the jury found they were lunatic. The point being reserved was heard before COLERIDGE, DENMAN, STEPHEN, POLLOCK, and FIELD, all of whom affirmed the conviction, holding that such belief was immaterial. The Court held that to hold otherwise would frustrate the object of the statute.

In *Redgate vs. Haynes, L. R.,* 1 *Q. B. Div.,* 89, the appellant was charged with *suffering gaming* to be carried on upon her premises. She had retired for the night, leaving the house in charge of the hall porter, who withdrew his chair to a part of the hotel remote from the guests, and did not see the gaming. It was held that the landlady was answerable. The same principle was maintained in *Mullins vs. Collins, L. R.,* 9 *Q. B.,* 292, where a

servant of a licensed victualler supplied liquor to a constable on duty without authority from his superior officer. The Court held that the licensed victualler was answerable, though he had no knowledge of the act of his servant. So also in a more recent case, in the *Queen's Bench*, *Cundy vs. LeCocq*, (23 *American Law Reg.*, 768,) where a person was convicted under the licensing Act of 1872, of having sold liquors to a drunken person, the question was reserved whether as it was proved that neither the defendant nor his servants knew the man was drunk, and there were no indications of his being intoxicated, and they had no means of knowing, he could be convicted. The Court, through Judge STEPHEN, affirmed the conviction, holding that it was no defence against conviction, and was only a ground for mitigation in punishment.

In *McCutcheon vs. The People*, 69 *Illinois*, 606, the indictment was for the same offence as that charged in this case, and the Court lay down the law as we think it is, and ought to be, as the logical result of the immateriality in such case of criminal intent, as all the cases we have cited establish. The Court says "this construction imposes no hardship on the licensed seller. If he does not *know* the party, who seeks to buy intoxicating liquors at his counter, is legally competent to do so, he must refuse to make the sale. If he violates either clause of the statute, he must suffer the penalty of its violation. It is no answer to this view to say the licensee may sometimes be imposed on, and made to suffer when he had no intention to violate its provisions. This is a risk incident to the business which he undertakes to conduct, and as he receives the gains connected therewith he must also assume all the hazards. The Court adds that it is immaterial whether the sale was made by the appellant, or an agent, and that, if made by an agent, the presumption is conclusive that he acted within the scope of his authority. When the agent, as in this case, is set to do

Carroll *vs.* State.

the very thing which, and which only, the principal's business contemplates, namely, the dispensing of liquors to purchasers, the principal must be chargeable with the agent's violation of legal restrictions on that business. His gains are increased, and he must bear the consequences. The fact, that he has given orders not to sell to minors only shows a *bona fide intent* to obey the law, which all the authorities say is immaterial, in determining guilt. The Court may regard such fact, in graduating punishment, when it has a discretion.

The cases, therefore, which hold that such orders will exculpate the principal, are inconsistent with the rule, that, in such case intent is immaterial. If intent is not an ingredient in the offence, it logically follows, that it must be immaterial whether such orders are given or not, for he who does by another that which he cannot lawfully do in person, must be responsible for the agent's act. In fact it is his act. If the principal makes such sale at his peril, and is not excusable, because he did not know or was deceived, for the reason that he was bound to know, and if he was not certain should decline to sell, or take the hazard, it cannot be, that by setting another to do his work, and occupying himself elsewhere and otherwise, he can reap the benefit of his agent's sales, and escape the consequences of the agent's conduct. It would be impossible to effectually enforce a statute of this kind, if that were allowed; and no license would ever be suppressed. The law would soon become "a dead letter." That this has been the accepted law in this State, in the opinion of the Legislature, is clearly shown by the special Act of 1876, chapter 273, for the City of Annapolis, whereby it is expressly provided that the seller of liquor to minors shall not be punishable if he has been honestly deceived as to the age of the party applying to buy, through the misrepresentations of the buyer; and the person making the purchase through misrepresentation is punishable instead

of the seller ; and further "that the act of any agent under this section shall not be binding on his principal, if the Court or jury shall believe that said act was committed ·against the *bona fide* instructions of said principal."

It follows from what we have said, that we think there was no error in the rulings of the Circuit Court.

*Rulings affirmed, and*
*cause remanded.*

(Decided 23d June, 1885.)

Judges ROBINSON and YELLOTT dissented.